UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
MAYNARD MUNROE,

                          Plaintiff,                    **MEMORANDUM & ORDER**
                                                                15-CV-0879 (MKB)

                          v.

NATIONSTAR MORTGAGE LLC,

                          Defendant.
-------------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

      On February 19, 2015, Plaintiff, proceeding *pro se*, commenced the above-captioned action against Nationstar Mortgage LLC ("Nationstar"), alleging that Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 (the "FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (the "FDCPA"), and asserting claims for unconscionable and deceptive trade practices in violation of New York City Administrative Code, N.Y. City Admin. Code § 20-493 ("City Admin Code"), and the New York State General Business Law, N.Y. Gen. Bus. Law § 349 ("GBL").[1] (Compl. ¶¶ 1, 15–48, Docket Entry No. 1.) On November 16, 2015, Nationstar moved to dismiss the Complaint pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 14; Def. Mem. of Law in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 14-6; Def. Reply Mem. of Law in Supp. of Def. Mot. ("Def. Reply"), Docket Entry No. 15.) For the reasons set forth below, the Court grants in part and denies in part Nationstar's motion to dismiss the Complaint.

---

[1] At a pre-motion conference on August 28, 2015, Plaintiff withdrew claims for identity theft and invasion of privacy. (Min. Entry dated Aug. 28, 2015.)

## I. Background

The following facts are taken from the Complaint and are accepted as true for the purposes of deciding the motion.

On July 17, 2006, Plaintiff executed a promissory note for $300,000 payable to Aegis Wholesale Corporation (the "Loan") and secured by a mortgage (the "Mortgage") on real property located at 210–21 89th Avenue, Queens Village, New York 11428 (the "Property").[2] (Note, annexed to Compl. as Ex. I.) According to Plaintiff, he incurred the debt "primarily for personal, family or household purposes." (Compl. ¶ 5.) On March 10, 2009, Aurora Loan Services LLC ("Aurora") initiated a foreclosure proceeding in the Supreme Court of the State of New York, Queens County (the "Foreclosure"). (Summons, annexed to Compl. as Ex. III; *see* Compl. ¶ 7.) On October 22, 2012, Aurora assigned the Mortgage to Nationstar (the "Assignment").[3] (Assignment of Mortgage, annexed to Compl. as Ex. IV; *see* Compl. ¶ 8.)

On or about January 22, 2014, Plaintiff filed a "Consumer Notice of Dispute" in the pending foreclosure action, demanding validation of the mortgage debt pursuant to the FDCPA (the "Notice of Dispute"). (Notice of Dispute, annexed to Compl. as Ex. V; *see* Compl. ¶ 9.) In a letter dated February 4, 2014, Nationstar responded to Plaintiff's Notice of Dispute and stated that it enclosed copies of the promissory note, mortgage, and assignment to "verify the proof of debt." (Verification Letter, annexed to Compl. as Ex. VI; *see* Compl. ¶ 10.) According to

---

[2] Defendant states that on July 17, 2006, Plaintiff also executed an investment purpose affidavit, which contains the Loan's number, the same identification number as the Mortgage, and Plaintiff's handwritten information (the "Investment Purpose Affidavit"). (Declaration of Amanda L. Genovese, annexed to Def. Mot as Ex. B.) For reasons explained below, the Court does not consider this document in deciding this motion.

[3] Plaintiff does not allege a date of the assignment of the Loan from Aegis Wholesale Corporation to Aurora. The assignment from Aurora to Nationstar states that the prior assignment was dated March 4, 2009. (Assignment of Mortgage.)

Plaintiff, the legal documents provided to him by Nationstar, which are not attached to the Complaint, "name[] an entirely different entity" than Nationstar. (Compl. ¶ 10.)

Plaintiff states that Nationstar began "reporting [the] alleged debt to the credit reporting agencies" and that the "amounts alleged to be due and owing" in Plaintiff's credit report were "in conflict with the alleged amounts" reported in the documentation mailed to Plaintiff to verify the Loan. (*Id*.) In a letter dated February 1, 2014, the credit reporting agency TransUnion notified Plaintiff of a change in his credit report, identifying Nationstar as a new creditor. (TransUnion Letter, annexed to Compl. as Ex. VII.) Plaintiff states that he then "obtained his consumer credit report from the three major" credit reporting agencies — Equifax, Experian and TransUnion — and that Plaintiff "discovered" that Nationstar had reported "this alleged debt" to all three agencies. (Compl. ¶ 11.) On April 13, 2014, Plaintiff "filed disputes with the credit agencies," pursuant to the FCRA. (*Id*.) On or about May 13, 2014, each of the three major credit reporting agencies informed him that, after conducting an investigation with Nationstar, they determined the debt was valid and owed by Plaintiff. (*Id*.) Plaintiff asserts that the credit reporting was "erroneous." (*Id*. ¶ 12.) Plaintiff states that Nationstar has failed to verify or validate the debt, causing him economic harm. (*Id*.) Plaintiff further asserts that Nationstar is not a "[c]reditor[], [l]ender[], nor [m]ortgagee[]" and that it did not "provide any credit or services" to Plaintiff. (*Id*. ¶ 13.)

## II. Discussion

### a. Standards of review

#### i. Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw

3

inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

    ii. **Documents considered**

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). In addition, courts may consider "documents that, although not

4

incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). A court need not consider other information outside the pleadings, but where a court does not exclude extraneous information, it must give notice to the parties and convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (holding that, before converting a motion to dismiss into a motion for summary judgment, "the court give sufficient notice to an opposing party and an opportunity for that party to respond"); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202–03 (2d Cir. 2013) ("[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforce[d] and mandatory.").

  b. **Fair Credit Reporting Act claim**

The FRCA "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). Sections 1681s-2(a) and (b) of the FCRA impose certain duties and obligations upon those who furnish information to consumer credit agencies.[4] *See* 15 U.S.C. § 1681(a), (b). Those obligations include the duties to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. 15 U.S.C. § 1681s-2(a); *see Longman*, 702 F.3d at 150 ("Among these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s-2(a)(1), and to correct any information they later

---

[4] A "furnisher" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2. Nationstar does not contest that Plaintiff has sufficiently stated that it is a furnisher.

5

discover to be inaccurate, *see* § 1681s-2(a)(2).").  Furthermore, furnishers have an obligation to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency.  *See* § 1681s-2(b); *Longman*, 702 F.3d at 150–51 ("Consumers have the right to dispute any information reported to a credit reporting agency." (citations omitted)).[5]

Nationstar moves to dismiss Plaintiff's FCRA claim, arguing that (1) if Plaintiff's claim is asserted pursuant to section 1681s–2(a), that section does not provide for a private right of action, and (2) if Plaintiff's claim is asserted pursuant to section 1681s–2(b), Plaintiff has failed to allege that any consumer reporting agency provided notice to Nationstar of a credit dispute by Plaintiff, required to trigger Nationstar's obligation to investigate.  (Def. Mem. 5–8.)  In opposing the motion to dismiss, Plaintiff does not address either argument against his FCRA claim.

i. Section § 1681s–2(a)

Nationstar argues that Plaintiff cannot state a claim to enforce the duty to provide accurate information, "[e]ven if the information [Nationstar] furnished to the credit bureaus was inaccurate," because only government officials can enforce this section of the FCRA.  (Def. Mem. 6.)

"[T]here is no private cause of action for violations of § 1681s–2(a)." *Longman*, 702 F.3d at 151 (collecting cases); *see Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445 (2d Cir. 2015) (stating that violations of 15 U.S.C. § 1681s–2(a), including the provision that "prohibit[s] a furnisher from reporting inaccurate information to a consumer report agency," are

---

[5] Where, instead, a dispute is "filed directly with the furnisher, the furnisher only has a duty to investigate in certain circumstances established by regulation." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150–51 (2d Cir. 2012) (first citing § 1681s–2(a)(8); and then citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 & n.8 (1st Cir. 2010)).

"not enforceable by means of a federal or state cause of action for damages"); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427 (S.D.N.Y. 2010) (citing § 1681s–2(a)). The statute expressly states that section 1681s–2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s–2(d); *see Longman*, 702 F.3d at 151 ("[T]he statute plainly restricts enforcement of that provision to federal and state authorities.").

Plaintiff alleges that Nationstar "failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report," (Compl. ¶ 21), and that Plaintiff has been harmed by Nationstar's "erroneous reporting of the alleged debt," which lowered his credit score and "led to multiple denials of credit, (*id.* ¶ 21). To the extent that Plaintiff is attempting to assert a claim for violations of section 1681s–2(a), the Complaint is dismissed.

    ii.    **Section § 1681s–2(b)**

Nationstar argues that Plaintiff has failed to state a claim pursuant to Section 1681s–2(b) because Plaintiff failed to allege that any consumer reporting agency gave Nationstar the notice required to trigger an obligation to investigate Plaintiff's credit dispute. (Def. Mem 6–8.)

Furnishers of information must investigate credit disputes in accordance with the statute and attendant regulations. Section 1681s–2(b) provides that, "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided . . . to a consumer reporting agency," furnishers of information must investigate the disputed information according to specific procedures. 15 U.S.C. § 1681s–2(b). Section 1681i(a)(2) requires consumer reporting agencies to notify furnishers of information regarding an underlying credit dispute if the furnisher provided the information in dispute. 15 U.S.C. § 1681i(a)(2).

To state a claim under section 1681s–2(b) of the statute, a plaintiff must allege that a furnisher received notice of a credit dispute from a consumer reporting agency. *See Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("[The] [p]laintiff's only claim can be pursuant to Section 1681s–2(b). . . . [S]uch a claim is stated only when [the] [p]laintiff can show that the furnisher received information regarding a consumer's credit directly from a credit reporting agency, and not only from the consumer."); *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172–74 (E.D.N.Y. 2012) ("[U]nder § 1681s–2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (alterations in original) (internal quotation marks omitted) (quoting *Prakash v. Homecomings Fin.*, No. 05-CV-2895, 2006 WL 2570900, at *3 (E.D.N.Y. Sept. 5, 2006))); *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005) ("[T]he duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute.").

Here, Plaintiff alleges that he notified Equifax, Experian and TransUnion to dispute the accuracy of the report that Nationstar was his creditor, (Compl. ¶ 11), and that Nationstar "received notice from the three major credit reporting agencies, Equifax, Experian and TransUnion," (*id.* ¶ 20). Plaintiff alleges that each of the agencies informed him that Nationstar participated in an investigation of his credit dispute, which determined his debt to be valid and owed to Nationstar. (*Id.* ¶ 11). Plaintiff further asserts that Nationstar "failed to properly investigate Plaintiff's disputes" and "failed to delete information found to be inaccurate and erroneous." (*Id.* ¶ 20.)

Nationstar argues that Plaintiff merely "baldly asserts" that it received notice from a

consumer reporting agency, and that Plaintiff fails to plead "facts from which any such notice could be found or confirmed" or to "attach anything to the Complaint to support the notion that notice was actually received by Nationstar." (Def. Mem. 6–7.) Nationstar provides no legal support for its contention that Plaintiff must provide documentary evidence of Nationstar's receipt of notice with his pleading in order to sufficiently state this claim. Instead, Nationstar cites to cases in which district courts have dismissed FCRA claims where plaintiffs have entirely failed to allege that a credit reporting agency informed the furnisher of a credit dispute. (*Id.* at 7); *see Algende v. Bay Ridge Fed. Credit Union*, No. 14-CV-2518, 2015 WL 1014217, at \*3 (E.D.N.Y. Mar. 9, 2015) (dismissing an FCRA claim because, while the plaintiff alleged that "he alerted Experian credit reporting agency" he failed to allege that "Experian informed [the] [d]efendant of the dispute as is required to trigger [the] [d]efendant's duties under the FCRA"); *Neblett v. Chase Bank*, No. 09-CV-10574, 2010 WL 3766762, at \*5 (S.D.N.Y. Sept. 27, 2010) (finding that the plaintiff had not stated a claim under section 1681s–2(b) because the plaintiff had "not alleged that a credit reporting agency notified Chase Bank of a dispute over the reporting of [the plaintiff's] credit").

In contrast to those cases, Plaintiff has alleged that Nationstar "received notice from the three major credit reporting agencies, Equifax, Experian and TransUnion." (Compl. ¶ 20). Contrary to Nationstar's contention, this is a factual allegation. Moreover, this assertion is plausible in the broader context of Plaintiff's pleading, which states that he reported his dispute to the three credit reporting agencies, who are themselves obligated to have informed Nationstar of the dispute, (*id.* ¶ 11), and that he was informed by all three agencies that they had conducted investigations of the dispute with Nationstar, (*id.*). *See Fashakin v. Nextel Commc'ns*, No. 05-CV-3080, 2006 WL 1875341, at \*5 (E.D.N.Y. July 5, 2006) (denying a motion to

9

dismiss an FCRA claim as to the furnisher because "it is not apparent that the plaintiff can prove no set of facts establishing that Nextel received notice from TransUnion of [the] [p]laintiff's dispute and failed to investigate same" (citation and internal quotation marks omitted)). The Court therefore denies Nationstar's motion to dismiss Plaintiff's FCRA claim, to the extent that it is asserted under section 1681s–2(b).

### c. Unconscionable and deceptive trade practices

Plaintiff alleges that Nationstar's "intentional acts of providing multiple erroneous, fabricated amounts allegedly due and owing" to credit reporting agencies constitutes unconscionable and deceptive trade practices in violation of the City Admin Code section 20-493 and GBL section 349. (*See* Compl. ¶¶ 31–37.) Nationstar argues that these claims should be dismissed because: (1) the City Admin Code does not provide a private right of action, (2) the GBL is preempted by the FCRA, and (3) Plaintiff has not alleged the consumer-oriented conduct, as necessary to state a claim under GBL section 349. (Def. Mem. 8–11.)

#### i. City Admin Code claim

Plaintiff invokes provisions of the City Admin Code that govern the licensing of debt collection agencies and prohibit some debt collection practices. (*See* Compl. ¶¶ 32–33, 37 (first citing N.Y.C. Admin. Code § 20–493; and then citing N.Y.C. Rules & Regs. § 2–190)); *see also Gallego v. Northland Grp., Inc.*, 102 F. Supp. 3d 506, 510 (S.D.N.Y. 2015) ("The New York City regulations provide that, '[i]n addition to any practices required under any federal, state or local law,' a debt collection agency must follow a number of specific rules when communicating with consumers in New York City." (quoting N.Y.C. Admin. Code § 20–493.1)), *aff'd in part, vacated in part*, 814 F.3d 123 (2d Cir. 2016). However, only the New York City Commissioner of the Department of Consumers Affairs can bring suit and impose the penalties under these

10

provisions. *See* N.Y.C. Admin. Code § 20–493 ("The commissioner shall have the power to enforce the provisions of this subchapter . . . ."); N.Y.C. Admin. Code § 20–494(a) ("Any person who, after notice and hearing shall be found guilty of violating any provision of this subchapter, shall be punished in accordance with the provisions of chapter one of this title . . . ."); N.Y.C. Admin. Code § 20–104(a) ("The commissioner or the commissioner's designee shall collect all fees for all such licenses and permits and shall otherwise enforce the [licensing provisions of chapter two."); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (dismissing a claim for "unfair competition and false advertising" under the City Admin Code because such a claim "may only be brought by the Commissioner of Consumer Affairs"). Because there is no private right of action for a debt collector's violation of licensing terms pursuant to the City Admin Code or for unconscionable and deceptive trade practices under this law, the Court dismisses Plaintiff's claim asserted under the City Admin Code § 20–493.

### ii. New York General Business Law claim

Under the FCRA, "no requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t (b)(1)(F). While the Second Circuit has not specifically held that claims under GBL section 349 and based upon allegations of false reporting to credit agencies are preempted by the FCRA, it has dismissed claims under other states' laws as preempted by section 1681t (b). *See Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) (dismissing as preempted by the FCRA Connecticut common law claims for defamation and intentional infliction of emotional distress based on allegations of false reporting to credit rating agency); *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 105 (2d Cir. 2009) (finding multiple

New York common law claims — including misappropriation of trade secrets, unfair competition and unjust enrichment — to be preempted by § 1681t (b)(1)(A), which similarly precludes state law prohibitions that "relat[e] to the prescreening of consumer reports").

The Second Circuit has further explained that "§ 1681t(b)(1)(F) preempts . . . claims that concern a furnisher's responsibilities" but does not "preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA." *Galper*, 802 F.3d at 446 (holding that a claim for identity theft under GBL §§ 380–1 and 380–s is not preempted by the FCRA because the claim did not "concern [the defendant's] responsibilities as a furnisher").

Here, Plaintiff alleges that Nationstar intentionally provided "multiple erroneous, fabricated amounts allegedly due and owing" to credit reporting agencies. (Compl. ¶ 34.) Plaintiff asserts that Nationstar "misrepresent[ed] the character and amount of the alleged debt," (*id*. ¶ 35), and failed to "provide a sensible computation of the amounts alleged to be due and owing," (*id*. ¶ 34), preventing Plaintiff from determining the amount owed and whether he should decide to "possibly satisfy the alleged debt if legitimate," (*id*. ¶ 35). These allegations relate to Plaintiff's claims that Nationstar reported incorrect and inconsistent debt amounts to credit reporting agencies and failed to conduct an investigation upon his dispute of the debt. As such, these allegations "concern" Nationstar's responsibilities as a furnisher, including both reporting accurate information and complying with obligations to investigate disputed debts, and are therefore preempted by the plain wording of section 1681t (b)(1)(F). *See Galper*, 802 F.3d at 443 ("[I]n cases . . . that involve a claim of express preemption, we focus on the plain wording of the statute, which is necessarily the best evidence of the scope of Congress's preemptive

intent." (citing *Chamber of Commerce of United States v. Whiting*, 563 U.S. 582, 131 S (2011)); *see also Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 175 (S.D.N.Y. 2012) (finding to be preempted by the FCRA a GBL section 349 claim based on allegations that a furnisher falsely reported a $200 debt to credit reporting agencies); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (holding that a GBL section 349 claim based on allegations that a furnisher reported false information to credit reporting agencies "falls squarely within the preemptive scope of Section 1681t"). Accordingly, the Court grants Nationstar's motion to dismiss Plaintiff's GBL claim.[6]

### d. FDCPA claim

Nationstar moves to dismiss Plaintiff's FDCPA claim, arguing that the Loan is not a "debt" within the language of the statute, but is instead a commercial transaction outside the reach of an FDCPA claim. (Def. Mem. 11–13.)

The FDCPA "defines a 'debt' as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.'" *Beauvoir v. Israel*, 794 F.3d 244, 247 (2d Cir. 2015) (quoting 15 U.S.C. § 1692a(5)); *see Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 170 (2d Cir. 2015) (quoting same); *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) ("While the FDCPA protects consumers from abusive debt collection practices . . . it applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." (citations omitted)). "What

---

[6] Because the Court finds that Plaintiff's claim is preempted, it does not address Nationstar's argument that Plaintiff has also failed to plead a GBL claim. (*See* Def. Mem. 9–10.)

matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Scarola*, 638 F. App'x at 102 (internal quotation marks omitted) (quoting *Beauvoir*, 794 F.3d at 248). The FDCPA "does not cover 'actions arising out of commercial debts.'" *Id*. (quoting *Goldman v. Cohen,* 445 F.3d 152, 154 n.1 (2d Cir. 2006)).

The Second Circuit has dismissed claims where the plaintiff's allegations or documents filed with a complaint show that an alleged debt is not within the scope of 1692a(5). For example, in *Scarola*, the Second Circuit affirmed the dismissal of an FDCPA claim in which the "alleged debt arose from purported transactions related to a business telephone account of the law firm," and thus was outside the language of section 1692a(5). *Id*. at 102 ("Scarola did not include any factual allegations . . . to support the inference that the amount in dispute arose from a consumer transaction, and, accordingly, he failed to state a claim . . . ."); *see also Beauvoir*, 794 F.3d at 248 (holding that the plaintiff did not "plausibly allege[] a 'debt' within the meaning of the FDCPA" because the complaint "allege[d] in only conclusory terms the existence of a 'consumer debt' and a document attached as an exhibit to the complaint stated that the money was owed as the result of unlawful conduct, which the Circuit held to be outside the scope of the FDCPA).

Plaintiff alleges that he "incurred a financial obligation that was primarily for personal, family or household purposes," (Compl. ¶ 5), and that Nationstar "attempt[ed] to collect a debt for 'household purposes,'" (*id*. ¶ 40 (citing 15 U.S.C. § 1692a(5))). Nationstar argues that these allegations are "unsupportable and false" and "directly contradicted by the Investment Purpose Affidavit, which was executed by Plaintiff with the Loan."[7] (Defs. Mem. 11.) Nationstar asserts

---

[7] Nationstar also asserts that during the pre-motion conference on August 28, 2015, Plaintiff "stated to the Court that the Mortgage was secured so that Plaintiff could use the

that, in the Investment Purpose Affidavit, Plaintiff states that the Loan was "made for financial gain" because he planned to use the Property as a rental property rather than as a personal residence, and that this admission takes the Loan outside the scope of section 1692a(5). (*Id.* at 12; Def. Reply 3.)

As explained above, on a motion to dismiss pursuant to Rule 12(b)(6), the Court is limited to "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Wilson*, 2016 WL 143454, at *1, as well as documents integral to the complaint, *L-7 Designs, Inc.*, 647 F.3d at 422. Contrary to Nationstar's claim, the Complaint nowhere references the Investment Purpose Affidavit. (*See* Def. Mem. 2 n.2.) Nationstar further states that the Investment Purpose Affidavit should be considered because Plaintiff relied on it in bringing this claim, but points to no evidence that Plaintiff did rely on the affidavit. (*Id.*) Moreover, Nationstar does not argue that any of the documents actually attached to the Complaint by Plaintiff demonstrate that the Loan is outside the scope of the FDCPA's definition of a debt. Because the Investment Purpose Affidavit is not properly before the Court on a motion to dismiss pursuant to Rule 12(b)(6), the Court denies Nationstar's motion to dismiss Plaintiff's FDCPA claim based on statements in the Investment Purpose Affidavit.

---

Property as a rental property." (Def. Mem. 11 n.7.) Nationstar provides no basis for the Court to consider such a statement in deciding a motion to dismiss.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Nationstar's motion to dismiss the Complaint. The Court dismisses Plaintiff's FCRA claim, if asserted under 15 U.S.C. § 1681s–2(a), and claims for violations of the GBL and the City Admin Code. The Court denies Nationstar's motion to dismiss Plaintiff's FCRA claim asserted under 15 U.S.C. § 1681s–2(b) and FDCPA claim.

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 13, 2016
      Brooklyn, New York